IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02035-REB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

LISA MARIE CORNWELL, f/k/a Lisa Marie Ansell,

    Plaintiff-Intervenor,

v.

THE VAIL CORPORATION,

    Defendant.
_____

**ORDER DENYING MOTION FOR INDEPENDENT MEDICAL EXAMINATION**
_____

**ORDER ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Defendant's Motion for Rule 35 Examination** [Docket No. 36-2; Filed June 27, 2008] (the "Motion"). Prior to the filing of Plaintiffs Equal Employment Opportunity Commission and Lisa Marie Cornwell's [hereinafter "Plaintiffs"] Response, Defendant filed a Supplement to the Motion based on the discovery of new information [Docket No. 53]. Plaintiffs were given several extensions of time to respond and did so on September 8, 2008 [Docket No. 76]. Defendant filed its Reply on September 24, 2008 [Docket No. 83]. The Motion, Supplement, Response and Reply are all sealed to protect disclosure of Plaintiff Cornwell's sensitive medical history.

    IT IS HEREBY **ORDERED** that the Motion is **DENIED** for the reasons set forth below.

## I. Preliminary Matters

### A. Failure to Timely Designate an Expert

The deadline for Defendant to designate an expert in this case was June 30, 2008 [Docket No. 29]. Rather than timely designate an expert and provide a report, Defendant moved to take an independent medical examination ("IME") of Plaintiff Cornwell. In its Motion, Defendant provided the name of two medical experts it intends to utilize in the examination. *Motion* [#36-2] at 6. Defendant did not, however, designate them as experts or provide reports written by them. On this basis alone, Plaintiffs contend that the Motion should be denied due to Defendant's failure to timely designate an expert. *Response* [#76] at 3, 6. Defendant argues that its Motion was enough to put Plaintiffs on notice of who its potential experts might be such that Plaintiffs are not prejudiced by an untimely designation. *Reply* [#83] at 10. It also argues that it could not timely designate and provide expert reports without first completing Plaintiff Cornwell's deposition or receiving permission to take her IME. *Id.* Finally, Defendant suggests that "in any event, Defendant was not required to separately move to extend the expert disclosure deadline." *Id.* Although the Court does not agree that Defendant's failure to timely or properly designate an expert necessitates the Motion's denial, the Court chooses to address Defendant's position.

The filing of a motion for IME does not stay applicable deadlines in the Scheduling Order. *See generally* D.C. Colo. L. Civ. R. 6.1(F)(2) ("[O]nly time variances specifically approved by court order upon motion . . . will be recognized as having any binding effect."). Moreover, no party is entitled to ignore those deadlines or assume that they do not apply. Rather, prior to expiration of a deadline, a party is required to move for extension of time supported by a statement of good cause. Fed. R. Civ. P. 16(b)(4). If a party discovers that

2

it needs an extension of time after a deadline has expired, it must move for that extension supported by a statement of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). Under no circumstances should a party assume that the Court will *sua sponte* extend an expert disclosure deadline in conjunction with a motion for IME or that if an IME is granted, excusable neglect is evident. Defendant's cavalier attitude toward the Court's deadlines and rules, and its expectation that relief will be provided that has not been requested or supported by the required showing, is mystifying.[1]

    **B.    Defendant's Supplement**

Plaintiffs also seek denial of Defendant's Motion on the basis of several alleged procedural deficiencies attributed to Defendant's Supplement. Specifically, Plaintiffs argue that the Supplement should be stricken and the Motion denied because (1) the Supplement should have been filed under seal; (2) Defendant did not comply with D.C. Colo. L. Civ. R. 7.1(A); and (3) Defendant did not seek permission from the Court to file the Supplement. *Response* [#76] at 6-7. The Court is not persuaded by these arguments. First, the parties are not bound by a protective order in this case. Accordingly, the Court is at a loss to identify the source of any alleged obligation to file pleadings under seal. Second, Defendant's certification of compliance with Local Rule 7.1(A) as to the Motion satisfies its duty to confer. A pleading intended to supplement the information contained within a motion, is not, itself, a motion and does not fall within the rule. Finally, neither the Court,

---

[1] Moreover, to the extent that Defendant suggests that the Court should not consider this issue because Plaintiffs promised not to "argue that Defendant had exceeded any pending deadlines" in exchange for Defendant's support for extensions of time for Plaintiffs to respond to the Motion, Defendant again advances a hollow argument. *See Reply* [#83] at 10 n.3. The parties have no authority to agree among themselves to extend deadlines contained in a Court Order. *See* D.C. Colo. L. Civ. R. 6.1(B).

nor the Federal Rules of Civil Procedure, nor the Local Rules require permission to supplement a motion.[2]  *But see* Fed. R. Civ. P. 15(d) (requiring a motion to supplement a party's complaint).  While Plaintiffs correctly note that the Motion does not comply with D.C. Colo. L. Civ. R. 7.1(D) in that unpublished decisions referred to therein are not attached, the Court does not find that such noncompliance is grounds to strike the Supplement or to deny the relief requested in the Motion.

## II.  Merits of the Motion

A motion seeking permission to conduct an IME pursuant to Fed. R. Civ. P. 35 must be based on two prerequisites:  (1) the plaintiff's mental or physical condition must be "in controversy"; and (2) "good cause" for the examination must exist.

> [T]he "in controversy" and "good cause" requirements of Rule 35 would not be satisfied by conclusory allegations contained in the pleadings, or by assertions of mere relevance to the case.  Rule 35 requires an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

*LeFave v. Symbios, Inc.*, No. Civ. A. 99-Z-1217, 2000 WL 1644154, at *4 (D. Colo. Apr. 14, 2000) (unpublished decision).

### A.     Mental Condition In Controversy

A plaintiff who asserts a claim for emotional distress damages does not automatically place her mental condition in controversy for purposes of ordering an IME. *Truong v. Smith*, 183 F.R.D. 273, 275-76 (D. Colo. 1998).  Rather, the "in controversy"

---

[2] Indeed, the Local Rules specifically *permit* the filing of supplemental authority when a matter is set for hearing.  D.C. Colo. L. Civ. R. 7.1(E).  I can discern no reason to disallow the filing of supplements, or to require that permission be granted in advance, when a hearing is not scheduled.

4

standard requires something more, i.e., "a separate claim of intentional infliction of emotional distress" or "a damages claim for severe and emotionally devastating harm." *Id.* at 275. A plaintiff may also place her medical condition in controversy by conceding the fact. *See LeFave*, 2000 WL 1644154, at *5.

Here, Plaintiffs do not concede that Plaintiff Cornwell's mental condition is in controversy, nor do they assert a separate claim for intentional infliction of emotional distress. Rather, they contend that Plaintiff Cornwell's claim for emotional distress damages is limited to "garden-variety" emotional distress. As such, the only way Plaintiff Cornwell's mental condition can be in controversy for purposes of Rule 35 is if she asserts a claim for significant emotional or mental harm, akin to an injury or disorder. Because this analysis coincides with the good cause requirement, the Court analyzes the remainder of the Motion pursuant to that standard.

### B. Good cause

Good cause can be shown for ordering a mental examination pursuant to Fed. R. Civ. P. 35 if, in addition to a request for emotional distress damages, a plaintiff asserts one or more of the following:

> (1) . . . a specific cause of action for intentional or negligent infliction of emotional distress; (2) . . . a specific mental or psychiatric injury or disorder, (3) . . . unusually severe emotional distress; (4) . . . expert testimony in support of [her] claim for emotional distress damages; and[/or] (5) [a concession] that [her] mental condition is "in controversy" within the meaning of Fed. R. Civ. P. 35(a).

*LeFave*, 2000 WL 1644154, at *4 (citations omitted). As noted earlier, neither factor (1) nor (5) is present here. As such, the Court considers whether Plaintiffs have alleged that Plaintiff Cornwell suffered a specific mental injury or disorder, whether Plaintiffs intend to

5

elicit expert testimony on Plaintiff Cornwell's mental condition, or whether Plaintiff Cornwell has asserted unusually severe emotional distress.

**Specific mental injury or disorder** – Defendant contends that good cause exists to conduct an IME of Plaintiff Cornwell because she has been diagnosed with post traumatic stress disorder ("PTSD") by her current therapist, Jane Bingham. This diagnosis was obtained through discovery from Ms. Bingham, and was not disclosed by Plaintiffs. Plaintiffs argue that the fact that "Defendant learned in discovery that Ms. Cornwell has been diagnosed with PTSD, does not mean ***the Plaintiffs*** have alleged it. They have not." *Response* [#76] at 10 (emphasis in original). Moreover, Plaintiffs acknowledge that "[w]hile Ms. Cornwell has been diagnosed as having certain mental conditions, these are not conditions for which Plaintiffs seek damages." *Id.* at 2. The Court considers these statements by Plaintiffs to be judicial admissions, and Plaintiffs are bound by them. *See U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005); *Baker v. Echostar Commc'ns Corp.*, No. 06-cv-01103, 2007 WL 4287494, at **14-15 (D. Colo. Dec. 4, 2007) (unpublished decision). These admissions are significant to the Court's analysis. If Plaintiffs intended to present evidence of Plaintiff Cornwell's diagnosed mental or psychological injuries or disorders, a Rule 35 examination would likely be warranted. Accordingly, Plaintiffs shall not be permitted to present evidence at trial regarding Plaintiff Cornwell's alleged PTSD or other diagnosed mental or emotional conditions.

**Expert testimony** – Plaintiffs have conveyed to the Court and Defendant that they do not intend to present any expert testimony from Ms. Bingham, or any other expert witness, about Plaintiff Cornwell's alleged emotional distress. *Response* [#76] at 3. Further, Plaintiffs have specifically withdrawn their designation of Ms. Bingham as a fact

6

witness. *Id.* at 4. In addition, although Plaintiffs produced the medical records of Mr. Bair, another mental health professional who treated Plaintiff Cornwell, "Plaintiffs will not rely on any events related to Mr. Bair's treatment to establish Ms. Cornwell's emotional distress damages in this case." *Id.* at 4. Again, the Court treats these statements as judicial admissions and factors them into the decision of whether good cause exists to examine Plaintiff Cornwell. Accordingly, Plaintiffs shall not be permitted to present expert testimony at trial regarding Plaintiff Cornwell's emotional distress.

**Unusually severe mental distress** – The extent of Plaintiff Cornwell's emotional distress claims, as set forth by Plaintiffs, are: "mental anguish, humiliation, inconvenience, pain and suffering, [and] loss of enjoyment of life." *Id.* at 10. Defendant contends that the pleadings and discovery in the case reveal "the full picture that Intervenor's complaints of emotional distress rise well above the 'garden-variety' level." *Reply* [#83] at 2. In support of its contention, Defendant cites to Plaintiff Cornwell's deposition testimony where she testified that she began seeing Ms. Bingham due, in part, to the nightmares she continued to have about her treatment by Defendant. *Id.* at 3. In addition to having nightmares, she summarized her mental condition as "loss of self-confidence, not sleeping, stressed out, trust issues, tired all the time, and always looking over your shoulder." *Plaintiff Cornwell Deposition* [#83-2] at 7. This is the primary evidence about Plaintiff Cornwell's mental condition that is attributable to her own testimony. The remaining evidence cited by Defendant was adduced from Ms. Bingham and Mr. Bair. The testimony and documents obtained from these individuals tends to elevate the seriousness of Plaintiff Cornwell's mental condition, including the PTSD diagnosis. However, Plaintiffs have averred that they do not intend to present any evidence relating to Plaintiff Cornwell's treatment by mental

7

health professionals, including any diagnoses or testimony from these individuals.

Defendant contends that like the plaintiff in *Thiessen*, Plaintiff Cornwell's emotional issues rise above those that can be described as garden-variety mental health concerns. *See Thiessen v. GE Capital Corp.*, 178 F.R.D. 568 (D. Kan. 1998). There, the plaintiff testified in his deposition that he suffered from "specific injuries caused by defendants' alleged misconduct." *Id.* at 570. He testified that his mental distress led to

> "real health problems," including water in his lungs and congestive heart failure. Plaintiff further testified that he hadn't "slept well" . . . [and] that defendants' actions "came very close to causing the separation of [him] and [his] fiancee." Plaintiff also described himself as "very, very tired" and complained of getting "worn out much, much, easier." Significantly, he linked these symptoms to defendants' alleged misconduct. Finally, plaintiff testified that he experienced, and still experiences, periods of great sadness or depression as a result of defendants' actions.

*Id.* Based on the plaintiff's testimony, the court held that the plaintiff had placed his mental condition in controversy despite the fact that no medical expert would testify. *Id.* at 570-71.

Defendant also contends that Plaintiffs' emotional distress claim rises to the level of the claims made in *Greenhorn* which were found to constitute unusually severe emotional distress. *See Greenhorn v. Marriott Int'l, Inc.*, 216 F.R.D. 649, 651-54 (D. Kan. 2003). There, the plaintiff complained of "persistent insomnia which has continued unabated to the present day, as well as serious and lasting emotional trauma . . . fear and apprehension . . . [being] plagued by constant fatigue, . . . low motivation, . . . greatly diminished organizational skills, and . . . hallucinations." *Id.* at 651. Plaintiff also designated an expert to testify on her behalf regarding her mental condition, including her "major depression." *Id.* at 652.

The Court disagrees that Plaintiff Cornwell's complained of emotional conditions rise

8

to the same level as those made by the plaintiffs in *Thiessen* and *Greenhorn*. This is especially true because the full extent of her conditions as described to her medical health professionals, not all of which are attributable to her alleged wrongful termination, will not be presented to the jury. Rather, the Court accepts Plaintiffs' admission that they do not intend to seek emotional distress damages for anything beyond garden-variety emotional distress and that they intend to focus solely on general emotional distress manifestations such as lack of confidence and loss of enjoyment of life, and on circumstances "which understandably cause emotional distress, [e.g., distress that comes through the loss of a home due to Defendant's withdrawal of reduced-rent housing,] but are not circumstances which can be assumed to cause some psychiatric disorder warranting a Rule 35 exam, particularly in this case where no such harm has been alleged." *Response* [#76] at 11.

Moreover, the Court also notes Plaintiffs' acknowledgment that, contrary to Defendant's assertion, they do not intend to present evidence that Plaintiff Cornwell suffers from "severe depression." *Compare Motion* [#36-2] at 4, *with Response* [#76] at 4. Plaintiffs note that "none of the records Defendant has referenced reflect that *Plaintiffs* have made any such allegation." *Response* [#76] at 4. Plaintiffs also indicate that they do not intend to present any evidence, because none exists, that Plaintiff Cornwell is "obsessed" about the loss of her job. *Id.* at 4-5. Further, in response to Defendant's assertion that "Intervenor is expected to testify that her mental condition arises out of her work environment," Plaintiffs aver that they "have expressly stated that they only seek 'garden[-]variety' emotional distress damages. Thus, there is no expectation whatsoever that Ms. Cornwell will testify as Defendant claims." *Id.* at 5. Finally, Plaintiffs address Ms. Bingham's testimony about Plaintiff Cornwell's mental condition, and specifically reject

9

Defendant's assertion that Ms. Bingham's testimony resulted from Plaintiff Cornwell's claims.  *Id.* at 5-6.  As noted earlier, they disavow the relevance of Ms. Bingham's testimony to Plaintiff Cornwell's claims and do not intend to rely on it to establish the garden-variety emotional distress that they will present to the jury.

Given the above recitation of Plaintiffs' admissions about the extent of her emotional distress claims, I find that none of the factors set forth in *LaFave* are present to justify an IME.  Emotional distress limited to mental anguish, humiliation, inconvenience, pain and suffering, and loss of enjoyment of life does not place Plaintiff Cornwell's mental condition in controversy and does not provide good cause for requiring an IME.  *See Truong*, 183 F.R.D. at 275-76; *LeFave*, 2000 WL 1644154, at *5.  Quite simply, Plaintiffs are bound by their stated limitations on Plaintiff Cornwell's emotional distress claim, which does not rise to the level of asserting specific diagnosed mental injuries, disorders, or unusually severe psychological conditions.

This conclusion is supported by a myriad of cases from this and other districts.  *See, e.g.*, *LeFave*, 2000 WL 1644154, at *5 (denying Rule 35 examination where plaintiff's emotional distress claims were limited to "pain and suffering, embarrassment and humiliation"); *O'Sullivan v. Minnesota*, 176 F.R.D. 325, 327-28 (D. Minn. 1997) (denying Rule 35 examination where plaintiff agreed not to present evidence that she suffered from a clinically diagnosable injury as a precondition to denial of the examination); *Turner v. Imperial Stores*, 161 F.R.D. 89, 92, 97 (S.D. Cal. 1995) (denying Rule 35 examination where employee claimed damages for humiliation and mental anguish but did not assert mental injury or unusually severe mental distress and did not intend to present expert testimony); *Jarrar v. Harris*, No. CV 07-3299, 2008 WL 2946000, **1-2 (E.D.N.Y. July 25,

2008) (unpublished decision) (denying Rule 35 examination where plaintiff's emotional distress claims were limited to being "scared, shocked, terrified, embarrassed, ashamed, humiliated and upset," which were emotions that plaintiff continued to feel long after the triggering event transpired); *Taylor v. ABT Elecs., Inc.*, No. 05 C 576, 2007 WL 1455842, at *1 (N.D. Ill. May 14, 2007) (unpublished decision) (denying Rule 35 examination "on the fact that Plaintiff is now foregoing any claims for the causation or aggravation of any physical condition she may have had and that she agreed not to call any physicians or mental health providers").

Defendant is correct that Plaintiffs cannot have it both ways. If Plaintiffs intended to present evidence that Plaintiff Cornwell suffers from a specific mental injury or disorder or evidence regarding her visits with therapists and their diagnoses, Plaintiff Cornwell would be obligated to undergo an IME. However, as Plaintiffs aver, they do not intend to introduce evidence of emotional distress over and above what a reasonable person could suffer after being wrongfully terminated, e.g., mental anguish, humiliation, loss of confidence, etc. *See Turner*, 2007 WL 1455842, at *2 (noting that because plaintiff only seeks garden-variety emotional distress, she will not be allowed to bring any claims pertaining to causation of any physical conditions nor seek testimony from mental health experts). These are all topics about which Plaintiff Cornwell is equipped to testify and which Defendant can defend against without the aid of a medical expert. *See Jarrar*, 2008 WL 2946000, at *5.

> Lay jurors are entirely competent to evaluate [plaintiff's] allegations that he was scared, embarrassed, shamed, and humiliated as a result of the defendants' alleged misconduct, and that he continues to feel similar emotions in certain situations to this day. The defendants are equally competent to meet such testimony without an expert.

11

*Id.* Accordingly, Defendant's Motion is **denied**.

IT IS FURTHER **ORDERED** that, as a result of Plaintiffs' judicial admissions made herein, Plaintiffs shall not be permitted to present testimony or other evidence regarding: (1) Plaintiff Cornwell's alleged diagnosed mental or emotional injuries or disorders; (2) severe emotional distress; and/or (3) expert testimony regarding Plaintiff Cornwell's alleged emotional distress.

Dated: October 1, 2008

BY THE COURT:

  s/ Kristen L. Mix  
U.S. Magistrate Judge
Kristen L. Mix